DAVIS, Justice.
[¶ 1] Speedy Bail Bonds appeals from a district court order denying its motion to set *652 aside the forfeiture of a $50,000 surety bond it posted on behalf of a defendant in a drug trafficking case. We affirm.
ISSUE
[¶ 2] Speedy poses a single question that we restate as follows:
Did the district court abuse its discretion when it refused to set aside the bond forfeiture in this case?[1]
FACTS
[¶ 3] On the day after Christmas of 2016, a Wyoming Highway Patrol trooper stopped a semi-truck in Albany County to perform a commercial vehicle inspection. In addition to the driver, two others were in the vehicle, one of whom was Florida resident Nicolas Trujillo.[2] The trooper eventually discovered five plastic-wrapped packages containing approximately twenty-three pounds of methamphetamine, $3,600 in cash, and a roll of plastic wrap like that used to package the drugs. Two days later, Trujillo was charged with possessing methamphetamine and possessing that controlled substance with the intent to deliver it.
[¶ 4] At his initial appearance on December 29, 2016, the circuit court appointed Trujillo an attorney, set a $50,000 cash bond, and scheduled his preliminary hearing for January 11, 2017. On January 11, the court continued that hearing for twenty days on Trujillo's motion, and on January 13 it admitted a Miami area lawyer pro hac vice as one of Trujillo's attorneys. Four days later, his Wyoming attorney filed a motion to have his cash bond reduced to a surety bond of the same amount.
[¶ 5] On January 31, 2017, Trujillo appeared before a circuit court magistrate for his preliminary hearing and to be heard on his bond reduction motion. The magistrate indicated that he would approve a $50,000 surety bond on the condition that Trujillo surrender his passport to the court within thirty days after the bond was posted; i.e., thirty days after he was released. The magistrate noted that the thirty days would give Trujillo time to return to Florida and arrange to send or otherwise deliver the passport.
[¶ 6] The record does not reflect that a bail bondsman was at the hearing, and the record contains no appearance bond or release order executed by either the circuit judge or the magistrate.[3] Trujillo executed a waiver of extradition and of his right to a preliminary hearing, and the magistrate bound the case over to the district court for trial.
[¶ 7] On February 13, 2017, the district court set Trujillo's arraignment for March 7, and a surety bond was executed and filed. Although we cannot decipher the signature of the bail bondsman who signed the bond, Speedy Bail Bonds, a Miami area company, has effectively admitted that it is liable on it. That instrument did not require Trujillo to surrender his passport, and the record contains no discussion with the district judge about such a condition.
[¶ 8] Trujillo failed to appear for his arraignment and the record reflects no communication with the district court about his absence. W.R.Cr.P. 46(f)(1) requires the district court to declare a forfeiture if a condition of the bond is violated, but paragraph (2) of that subsection permits the court to set aside the forfeiture partially or completely if the *653 surety later surrenders the defendant into custody, or if justice otherwise does not require forfeiture to some extent. Within a week of Trujillo's failure to appear at his arraignment, the district court issued a warrant for his arrest and an order forfeiting his bond.
[¶ 9] On April 10, 2017, Speedy filed motions to stay and set aside the forfeiture, and the State filed its opposition to those motions on April 18. At the hearing on the motions, Speedy asserted as the sole basis to set aside the forfeiture the same rationale that it now advances in this Court. It claims that it mistakenly believed, based on its experience in Florida, that Trujillo would be required to turn over his passport before he was released from custody.[4] However, that position was weakened considerably by the telephonic testimony of Mira Dwyer, the owner of Speedy Bail Bonds. She testified that if a defendant has not already surrendered his passport to a court, she does not put up bail without requiring him to first give her his passport, which she then keeps in a safe deposit box. Moreover, she sent her daughter to Cuba to make sure that Trujillo was not there, and had evidence indicating that he was in Texas. The district court aptly noted that surrendering his passport would not have kept Trujillo from fleeing to Texas.
[¶ 10] Later that same day, the court issued an order denying the motion to set aside the bond forfeiture, and Speedy timely perfected its appeal from that decision. Additional pertinent aspects of that order will be addressed below.
DISCUSSION
[¶ 11] This Court will not reverse the discretionary decision of a trial court to deny a full or partial remission of a bond forfeiture unless the appealing surety shows that that court clearly abused its discretion. Action Bailbonds v. State , 2002 WY 103, ¶ 5, 49 P.3d 992, 993-94 (Wyo. 2002) ; In re Northwest Bail Bonds, Inc. , 2002 WY 102, ¶ 6, 50 P.3d 313, 314-15 (Wyo. 2002). In assessing the reasonableness of the court's decision, we look to whether it improperly relied on punitive motives, such as frustration or vindictiveness, for the forfeiture. Action , ¶ 18, 49 P.3d at 996-97 ; Northwest , ¶ 9, 50 P.3d at 315 (both cases citing Application of Allied Fidelity Ins. Co. , 664 P.2d 1322, 1325-26 (Wyo. 1983) ).
[¶ 12] We also examine the district court's consideration of such relevant matters as: the willfulness of the criminal defendant's violation of his bond conditions; the relation between the amount forfeited and the probable costs and burdens to the State to regain custody; the degree to which the surety participated in apprehending the defendant; other costs, inconveniences, or prejudice suffered by the State due to the bond violation; the amount of delay caused, and the stage of the proceedings; the public interest in and need for the defendant's appearance; and any factors presented by the defendant which might mitigate his failure to appear. Action , ¶ 19, 49 P.3d at 997 ; Northwest , ¶ 10, 50 P.3d at 315-16.
[¶ 13] In addressing these factors, the district court, citing Beagle v. State , 2004 WY 30, ¶¶ 3-4, 86 P.3d 1271, 1272-74 (Wyo. 2004),[5] noted that a court should not remit a forfeiture if the defendant's failure to appear relates to inadequate supervision by the surety, or if the cost to the State of bringing him to court approaches the face amount of the bond. In these regards the court observed that, by all accounts, Trujillo intentionally fled and failed to appear at his arraignment, and that Speedy had no contact with him after his release.
[¶ 14] The district court determined that Speedy merely assumed that Trujillo would have to surrender his passport prior to his release, and that it failed to take its usual precautions to assure that this would be the case. Because Speedy had long been in the business of assessing and limiting the flight risks posed by those whose appearances it *654 has guaranteed, the court concluded that it should bear liability when its efforts fell short of its usual caution.
[¶ 15] Moreover, likely in light of Speedy's efforts to locate Trujillo, the court determined that considerable costs and inconvenience would accompany any independent efforts by the State to locate him and deliver him into custody. Even if those efforts were successful, the State and the court would suffer further inconvenience related to rescheduling proceedings, and delay of his prosecution in relation to those of his codefendants could potentially prejudice the State's position in all three cases, or in one or more of the cases of the codefendants. On the other hand, if Trujillo cannot be located and taken into custody, the State will be completely prejudiced by being unable to prosecute a serious drug trafficking case.
[¶ 16] The district court concluded that no mitigating factors existed to warrant setting aside the forfeited bond. More specifically, it did not find Speedy's alleged misunderstanding about the surrender of Trujillo's passport to be compelling given the responsibility that it knowingly assumed as a bondsman. To the contrary, the court determined it would not be in the interest of justice to allow Speedy to avoid that responsibility. It therefore denied the remission of any part of the forfeited bond.
[¶ 17] This decision was reasonable based on the evidence, and the court did not abuse its discretion.
CONCLUSION
[¶ 18] The district court's order denying Speedy Bail Bonds' motion to set aside forfeiture of its bond, wholly or in part, is affirmed.

Speedy attempts to raise an independent claim that the appearance bond it executed was an invalid and therefore unenforceable contract because its parties reached no "meeting of the minds" regarding the surrender of the defendant's passport. This claim was not raised in the district court. Accordingly, we adhere to our well-established practice and decline to consider that argument. Fowles v. Fowles , 2017 WY 112, ¶ 28, 402 P.3d 405, 412 (Wyo. 2017) (we generally do not consider claims raised for the first time on appeal); Crofts v. State ex rel. Dep't of Game & Fish , 2016 WY 4, ¶¶ 19-24, 367 P.3d 619, 624-25 (Wyo. 2016) (court will not consider issues raised for the first time on appeal unless they are "fundamental"). We do not consider this issue to be fundamental.

Trujillo apparently immigrated to the Miami area from Cuba, but he has been a naturalized United States citizen since 2011. At the time of his arrest he lived with his significant other and three children.

W.R.Cr.P. 46.1(e) requires that the terms of any conditional pre-trial release be memorialized in writing.

As noted above, nothing in the record gives reason to believe that the district court's appearance bond was conditioned on surrender of the passport, despite any statements to that effect by the circuit court magistrate.

Here, Beagle was quoting 3B Wright, King, and Klein, Federal Practice and Procedure: Criminal 3d § 777 (2004).