# THE SUPREME COURT, STATE OF WYOMING

# 2024 WY 38

**APRIL TERM, A.D. 2024**

**April 3, 2024**

IN THE MATTER OF THE BOND
FORFEITURE OF KARL GRANT
GUSTKE:

JOHN GUSTKE,

Appellant
(Proposed Intervenor/Assignee),

v.

THE STATE OF WYOMING,

Appellee
(Plaintiff).

S-23-0136

*Appeal from the District Court of Natrona County*
*The Honorable Daniel L. Forgey, Judge*

*Representing Appellant:*
    *Seth Shumaker, Sheridan, Wyoming.*

*Representing Appellee:*
    *Bridget L. Hill, Attorney General; Jenny L. Craig, Deputy Attorney General; Kristen R. Jones, Senior Assistant Attorney General.*

*Before FOX, C.J., and KAUTZ\*, BOOMGAARDEN, GRAY, and FENN, JJ.*

*\* Justice Kautz retired from judicial office effective March 26, 2024, and, pursuant to Article 5, § 5 of the Wyoming Constitution and Wyo. Stat. Ann. § 5-1-106(f) (2023), he was reassigned to act on this matter on March 27, 2024.*

NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third.  Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**FENN, Justice.**

[¶1]    John Gustke (Father) appeals from the district court's decision partially denying several motions to set aside the forfeiture of a $100,000 surety bond he was jointly liable for with his son, Karl Gustke (Criminal Defendant), through a promissory note and indemnity agreement with the surety and surety's insurer.  He also appeals the district court's decision denying his motion to intervene as a matter of right pursuant to Rule 24(a)(2) of the Wyoming Rules of Civil Procedure (W.R.C.P.), which the district court decided at a hearing without giving notice to Father.  We reverse and remand.

## ISSUES

[¶2]    Father presents three issues, which we rephrase as follows:[1]

    I.    Did the district court err when it addressed Father's motion to intervene at a hearing without giving Father notice?

    II.    Did the district court err when it denied Father's motion to intervene as a matter of right pursuant to W.R.C.P. 24(a)(2)?

    III.    Did the district court abuse its discretion when it set aside $10,000 of the $100,000 forfeited bond?

## FACTS

[¶3]    The procedural aspects of this matter are lengthy.  On March 5, 2019, Criminal Defendant was charged with aggravated assault and battery; bond was originally set at $500,000 cash, but the State agreed to reduce the bond to $100,000 cash or surety with stringent bond conditions.  Criminal Defendant agreed to the stringent bond conditions, which included wearing a global positioning system (GPS) tracking ankle monitor, participating in an alcohol-monitoring program, and remaining within the boundaries of Natrona County, Wyoming.  Criminal Defendant agreed to be jointly and severally liable on the bond and was informed of the penalties if he violated any condition of his release pursuant to the provisions of Rule 46 of the Wyoming Rules of Criminal Procedure (W.R.Cr.P.).

[¶4]    On March 21, 2019, Criminal Defendant executed a release and appearance bond, which listed 307 Bail Bonds LLC as the surety.  Although 307 Bail Bonds was listed as

---

[1] Our decision on the first issue requires reversal of the district court's decision.  In light of this disposition, we do not address Father's remaining issues.

1

surety, it was 307 Bail Bond's insurer, Lexington National Insurance Corporation (Lexington), who signed the bond and agreed to pay the sum of $100,000 should Criminal Defendant violate his bond conditions. Criminal Defendant and Lexington jointly and severally bound themselves to the terms of the bond, including "[i]f the bond is forfeited and the forfeiture is not set aside or remitted, judgment may be entered . . . against each debtor, jointly and severally, for the amount . . . stated together with interest and costs."

[¶5] Simultaneously with executing the bond, Criminal Defendant and Father entered into a promissory note with 307 Bail Bonds and Lexington. Pursuant to the terms of the promissory note, Criminal Defendant and Father jointly and severally agreed to pay 307 Bail Bonds the amount of $100,000 should the bond be forfeited for any reason. By signing the promissory note, Criminal Defendant and Father agreed if any amount of the bond was forfeited, it was their "complete responsibility" to pay any amount owed. Father further agreed to be solely responsible for any costs incurred and for the total amount forfeited. Father also paid a $10,000 non-refundable premium for 307 Bail Bonds to act as surety for Criminal Defendant.

[¶6] The district court set the underlying criminal matter for a three-day jury trial beginning on September 16, 2019. In violation of his bond conditions, on August 25, 2019, Criminal Defendant provided a remote breath sample which was positive for the presence of alcohol. He failed to provide additional testing on August 26–27, 2019. Criminal Defendant removed his ankle monitor and absconded—the ankle monitor indicated he left the State of Wyoming, and his last point of contact placed him in Montana.

[¶7] The State filed a petition to revoke the bond and requested the district court issue a bench warrant for Criminal Defendant's arrest, which the district court granted. Less than two weeks before trial, the State and Criminal Defendant's counsel stipulated to vacate the jury trial stating Criminal Defendant's whereabouts were unknown and he had absconded from justice. The district court vacated the jury trial.

[¶8] In accordance with the terms of the promissory note, Father paid $100,000 to 307 Bail Bonds in anticipation of the bond being forfeited. He further informed 307 Bail Bonds "[Criminal] Defendant went to the Big Horn Mountains to hide out and 'live off the land.'" 307 Bail Bonds in turn sent the $100,000 to Lexington to be placed in a cash collateral account until the bond was forfeited. Father paid an additional amount to 307 Bail Bonds to go search for and retrieve Criminal Defendant, but its attempts were unsuccessful.

[¶9] In March 2020, seven months after Criminal Defendant absconded from Wyoming, he voluntarily surrendered himself to authorities in Texas on an outstanding warrant for four 2018 charges of aggravated assault with a deadly weapon. Criminal Defendant had pled not guilty to the Texas charges and was awaiting trial on those charges at the same time he was awaiting trial for the Wyoming charge. On October 23, 2020, the State filed a request to forfeit Criminal Defendant's bond for his failure to appear and his absconding

2

from Natrona County, Wyoming. The district court ordered Criminal Defendant's bond be forfeited.

[¶10] The bench warrant for the Wyoming charge was not executed until after Criminal Defendant's Texas charges were resolved in August 2021. The Natrona County Sheriff's Office transported Criminal Defendant from Fort Worth, Texas, to Casper, Wyoming, and incurred charges for air fare, car rental, lodging, meals, and wages. Criminal Defendant's jury trial was held in September 2021, two years after his original trial date. The jury returned a not guilty verdict, and the district court entered an order of acquittal.

[¶11] In October 2021, Criminal Defendant filed a motion to set aside the bond forfeiture, arguing the forfeited bond exceeds reasonable compensation for the violation of his bond conditions. The district court set the matter for a hearing on November 30, 2021. At the November hearing, Criminal Defendant's counsel and the State appeared, but it was determined Lexington never paid the $100,000 forfeited bond even though Father had paid the funds to the surety. After the clerk's office notified Lexington the forfeited bond had not yet been paid, Lexington submitted a check in the amount of $100,000 to the district court. Lexington also filed a letter indicating that any remission of the forfeiture needed to be sent to Lexington.

[¶12] The district court reset Criminal Defendant's motion to set aside forfeiture for January 10, 2022. During the January hearing, the district court expressed concern regarding Criminal Defendant's standing because Lexington's letter indicated any remittance needed to be sent to Lexington. Criminal Defendant's counsel indicated Father paid the funds to 307 Bail Bonds and then Lexington forwarded the funds to the district court to pay for the forfeited bond. The district court continued the matter until Criminal Defendant's counsel could obtain the documents to show his client's standing to proceed on the motion to set aside forfeiture.

[¶13] Approximately six months later, in July 2022, 307 Bail Bonds filed a motion to set aside the bond forfeiture arguing it complied with all its obligations as the surety, and the bond should only be forfeited in the amount of the State's actual costs for Criminal Defendant's breach of his bond conditions. The district court set the matter for a hearing on September 29, 2022, and provided notice to the State, 307 Bail Bonds, and Criminal Defendant. The State was the only party to appear at the September 2022 hearing. The district court placed on the record the non-appearance of Criminal Defendant and 307 Bail Bonds and indicated if the parties wished to have the matter heard they could request another hearing.

[¶14] Four days after that hearing, counsel for 307 Bail Bonds and counsel for Criminal Defendant moved to continue the bond forfeiture hearing on the grounds that counsel for Criminal Defendant was at a medical appointment and had to undergo emergency surgery. The district court continued the hearing, and reset the matter for March 17, 2023, providing

notice to Criminal Defendant, 307 Bail Bonds, and the State. Two weeks before the hearing, on March 3, 2023, Lexington filed its motion to set aside the bond forfeiture arguing the surety and insurer acted in good faith when Criminal Defendant breached his bond conditions, and the State only expended approximately $5,000 to return Criminal Defendant to Wyoming for trial. Lexington argued the inconvenience to the State was minimal and largely unavoidable after Criminal Defendant was taken into custody in Texas. It claimed forfeiting the entire amount of the bond was impermissible because it was punitive and enriched the State. The district court set Lexington's motion for hearing on March 17, 2023, providing notice to Lexington, Criminal Defendant, 307 Bail Bonds, and the State.

[¶15] Four days before the scheduled hearing, on March 13, 2023, Father filed his motion to intervene claiming he was entitled to intervene as a matter of right pursuant to W.R.C.P. 24(a). Father argued he paid the entire amount of the bond, and Lexington would suffer no harm if the entire bond was forfeited. He further contended he had pending litigation with Lexington, and there was "little possibility that Lexington [would] protect [his] interest." Father requested a hearing on his motion to intervene, however, the district court never set a hearing on Father's motion.

[¶16] The State, counsel for 307 Bail Bonds, counsel for Lexington in the bond forfeiture proceeding, and counsel for Lexington in the civil litigation against Father appeared at the March 17, 2023, hearing. Criminal Defendant and Father did not appear. At the hearing, the district court addressed Father's motion to intervene without providing notice to Father. The district court asked if anyone was going to appear regarding the motion to intervene, and counsel for 307 Bail Bonds indicated he had spoken with counsel for Father but only regarding his intention to address the district court about the forfeiture. Counsel for Lexington in the civil litigation indicated he had spoken with counsel for Father, but he was unaware if Father intended to appear. The district court stated it had reviewed and considered Father's request to intervene and did not "see how [it] could grant" the motion. It further noted Father did not appear to participate in the hearing. The district court denied Father's motion to intervene and held there was nothing indicating he could permit Father to intervene.

[¶17] In an oral ruling, the district court partially granted and partially denied "[t]he motions to set aside the forfeiture" and requested counsel for Lexington to prepare the order. The district court ordered $10,000 of the forfeited bond to be set aside and upheld the forfeiture of $90,000 of the bond. Before the district court entered its written order, Father filed a motion for reconsideration. The district court denied Father's motion. It entered an order setting aside $10,000 of the forfeited bond, but the order only indicated it was partially granting and denying Lexington's motion. The written order did not address Criminal Defendant's and 307 Bail Bonds's motions, even though the oral ruling indicated the decision related to all pending motions. The district court entered its order denying Father's motion to intervene on April 27, 2023. Lexington assigned its interest in this

4

appeal to Father. Father timely appealed the district court's decision denying his intervention on his own behalf and its decision to set aside $10,000 of the forfeited bond on behalf of Lexington.

## **DISCUSSION**

[¶18] This case concerns whether an individual who entered into a promissory note with a surety is allowed to intervene in the underlying criminal forfeiture proceeding as a matter of right pursuant to W.R.C.P. 24(a)(2) (LexisNexis 2022). Although this case is criminal in nature, there is no criminal rule governing intervention. "In the event that a procedure is not established by [the Wyoming Rules of Criminal Procedure], the Wyoming Rules of Civil Procedure shall govern." W.R.Cr.P. 1(a) (LexisNexis 2022). W.R.C.P. 24(a)(2) governs intervention of right when there is no statute granting intervention as a matter of right:

> (a) *Intervention of Right.* – On timely motion, the court must permit anyone to intervene who:
>
> *   *   *
>
> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

[¶19] The four conditions that must be satisfied to permit intervention of right pursuant to W.R.C.P. 24(a)(2) are:

> First, the applicant must claim an interest related to the property or transaction which is the subject of the action. Second, the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest. Third, there must be a showing that the applicant's interest will not be adequately represented by the existing parties. Fourth, the application for intervention must be timely.

*Rodriguez-Williams v. Johnson*, 2024 WY 16, ¶ 9, 542 P.3d 632, 636 (Wyo. 2024) (quoting *In re EHD*, 2017 WY 134, ¶ 12, 405 P.3d 222, 225–26 (Wyo. 2017)). We have adopted the following standard of review with respect to questions involving intervention of right pursuant to W.R.C.P. 24(a)(2):

The first three conditions of intervention of right are questions of law. This Court accords no deference to a district court's decisions on issues of law. Because the first three conditions of intervention of right are questions of law, this Court will reverse the district court's denial of intervention of right if it erroneously denied intervention of right based on the first, second, or third conditions. The fourth condition, however, is a matter within the discretion of the district court.

*In re EHD*, ¶ 14, 405 P.3d at 226 (quoting *Hirshberg v. Coon*, 2012 WY 5, ¶ 9, 268 P.3d 258, 260 (Wyo. 2012)) (internal quotations marks and citations omitted).

[¶20] Here, the district court considered Father's request to intervene during its scheduled hearing on Criminal Defendant's, 307 Bail Bonds's, and Lexington's motions to set aside the forfeiture. The district court noted Father did not appear at the hearing to participate, though the district court never provided Father with notice that it intended to consider his request at the March 17, 2023, hearing. The district court denied Father's request to intervene and held:

> THE COURT: All right. I guess to start with, I reviewed and considered [Father's motion to intervene], but I don't see how I could grant that. I think that any interest that there may be there is dealt with in the other case and not here. Here, we're talking about the issue of whether to set aside a forfeiture of money that was paid by the surety, if I understand correctly, to the Court, based on the forfeiture order. And I don't see how that would require the Court or, to the extent it might be permissive, obviously, I'm not persuaded that I should permit them to intervene. So I'll deny the motion, noting also that they're not here to participate anyway, in a hearing where we're going to deal with what we have for us in this case.

In the district court's order on Father's motion for reconsideration it held:

> [Father] first asks this court to reconsider the denial of his motion to intervene. The court, as with the instant motion, did not feel it needed to set the motion to intervene for a hearing and, having nevertheless reviewed and considered the merits of the motion, verbally denied the motion on the record for the reasons stated during the March 17, 2023 hearing. The court's findings are incorporated herein by reference. Lexington National Insurance Company paid the money to the court that is at issue with respect to the forfeiture of [Criminal

6

Defendant's] bond, and any remission of that money or bond will be paid to Lexington National Insurance Company. Disputes between [Father] and Lexington National Insurance Company or others with respect to that money are being litigated in, and will be resolved by way of, Civil No. 111555, which is currently pending in the 7th Judicial District Court. The court finds that the motion to intervene should remain denied.

[¶21]  Father contends the district court violated procedural due process when it considered his motion to intervene during the March 17, 2023, hearing without providing him with notice and an opportunity to be heard.  He claims he was never provided a meaningful opportunity to show he satisfied the conditions necessary to permit intervention as a matter of right.  We agree.

[¶22]  "The touchstones of due process are notice and the opportunity to be heard, which must be appropriate to the nature of the case." *Booth v. Booth*, 2019 WY 5, ¶ 14, 432 P.3d 902, 907 (Wyo. 2019) (quoting *KC v. State*, 2015 WY 73, ¶ 16, 351 P.3d 236, 241 (Wyo. 2015)).  "[T]he process due at any given time must reflect the nature of the proceedings and the interests involved." *Tracy v. Tracy*, 2017 WY 17, ¶ 30, 388 P.3d 1257, 1264 (Wyo. 2017) (citing *KC*, ¶ 32, 351 P.3d at 245).  To satisfy due process, "[t]he opportunity to be heard must be meaningful." *Womack v. Swan*, 2018 WY 27, ¶ 20, 413 P.3d 127, 136 (Wyo. 2018) (citing *Goss v. Goss*, 780 P.2d 306, 310 (Wyo. 1989)).  "The question of whether an individual was afforded due process is a question of law that we also review de novo." *KC*, ¶ 16, 351 P.3d at 241; *Hanft v. City of Laramie*, 2021 WY 52, ¶ 45, 485 P.3d 369, 384 (Wyo. 2021).

[¶23]  A court may deny a request for a hearing "when it is clear from the record that the petitioner is not entitled to intervene." *Wild v. Adrian*, 2007 WY 61, ¶ 16, 155 P.3d 1036, 1040 (Wyo. 2007) (citing *Kneeland v. Nat'l Collegiate Athletic Assoc.*, 806 F.2d 1285, 1289 (5th Cir.1987), *certiorari denied sub nom. S. Methodist Univ. v. Kneeland*, 484 U.S. 817, 108 S. Ct. 72, 98 L. Ed. 2d 35; *see also* 7C Wright et al., *Fed. Prac. & Proc. Civ.* § 1914 (3d ed. April 2023 Update) ("Ordinarily there will be a hearing on the motion, at least if there is objection to the intervention from any party, but a hearing is not required if it is clear from the face of the application that the motion must be denied.").  Under the circumstances of this case, we cannot say it is clear from the record Father was not entitled to intervene as a matter of right.  The district court centered its holding on a separate civil case between the parties, and presumably Father's interest is not impaired or impeded because any dispute with respect to a remission of the bond is being litigated and resolved in that separate civil case.  However, the record contains no pleadings, information, or statements from the parties or Father as to the civil litigation.  The record is also unclear whether the district court took judicial notice of the separate matter when reaching its conclusion.  Father does assert in his motion to intervene his interest in setting aside the

7

forfeiture will be impaired and impeded because Father and Lexington are embroiled in pending litigation. The record provides no indication as to what the dispute is between Lexington and Father in the civil litigation, or how it is intertwined with the forfeiture proceeding.

[¶24] Father's motion to intervene clearly indicates he paid the forfeited $100,000 bond for Criminal Defendant to 307 Bail Bonds, which was later forwarded to the district court by Lexington. Father's motion also demonstrates he is liable for the forfeited bond, as well as any attorney's fees and costs for Lexington and 307 Bail Bonds associated with the forfeiture and possible remission. The executed agreements attached to father's motion further demonstrate he indemnified Lexington and 307 Bail Bonds against any loss from forfeiture of the bond. Father's supported allegations indicate, at the very least, he was entitled to an opportunity to be heard on the conditions of intervention before the district court rendered its decision. *See generally Allison v. People*, 286 P.2d 1102, 1106 (Colo. 1955) (finding the guarantors of the bond pursuant to an indemnity agreement with the surety company are unquestionably bound by the judgment and permitted to intervene as a matter of right under the Colorado Rules of Civil Procedure).

[¶25] "[T]he basic purpose of intervention of right is to permit a non-party to protect its otherwise-inadequately-represented interest in the action, by conferring party status upon the non-party." *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1239 (10th Cir. 2012) (citing F.R.C.P. 24(a)).[2] In *White v. Vermillion County Board of Zoning Appeals*, the Indiana Court of Appeals found the trial court's failure to hold a hearing on the four conditions for intervention of right constituted reversible error, especially when the appellate court was unable to consider the conditions from the record. 568 N.E.2d 1106, 1107–08 (Ind. Ct. App. 1991). In *Kirkpatrick Trust v. Lakeview Loan Services, LLC.*, the Florida District Court of Appeals held "a court violates a party's due process rights by expanding the scope of a hearing without proper notice." 377 So. 3d 650, 652 (Fla. Dist. Ct. App. 2024) (quoting *Carson-Grayson v. Grayson*, 247 So. 3d 675, 676 (Fla. Dist. Ct. App. 2018). In *Kirkpatrick Trust*, a land trust sought to intervene in a foreclosure proceeding. *Id.* at 651. Without giving the trust notice, the court addressed the trust's motion to intervene at a case management conference—a conference the trust received notice about but did not attend. *Id.* at 651–52. The court of appeals reversed and remanded for a properly noticed hearing on the motion to intervene. *Id.* at 653. It found "the notice failed to indicate that any substantive matters might be heard at the case management conference[,]" which "deprived the [t]rust of notice and opportunity to be heard on a critical issue—whether the [t]rust could participate in the case as a party." *Id.* at 652–53.

---

[2] "Because the Wyoming Rules of Civil Procedure are patterned after the Federal Rules of Civil Procedure, federal court interpretations of their rules are highly persuasive in our interpretation of the corresponding Wyoming rules." *Baker v. Baker*, 2023 WY 121, ¶ 19, 539 P.3d 412, 416 (Wyo. 2023).

[¶26]   Here, similar to *Kirkpatrick Trust*, the district court expanded the scope of the March 17, 2023, hearing by considering Father's motion to intervene without providing Father with any notice.  The district court denied Father's motion noting Father was not at the hearing "to participate anyway[.]"   Additionally, the district court considered details concerning the civil litigation that are not available in the record without providing Father or the parties with notice of its intent to take judicial notice of the civil litigation.  Father and the parties were not provided a meaningful opportunity to be heard on the material the court considered from the civil litigation. *See generally* W.R.E. 201(e) (LexisNexis 2022) ("A party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed.").  Much like the Indiana court in *White*, we are unable to consider the four conditions for intervention of right based on the record that is presently before us.  The district court should have held a hearing on Father's motion because it is not clear from the record that Father was not entitled to intervene. *See Wild*, 2007 WY 61, ¶ 16, 155 P.3d at 1040.

[¶27]   Because the district court erred by not providing Father with notice or a meaningful opportunity to be heard on his motion to intervene, any decision by this Court on the remission of the bond would be premature.  We therefore reverse the district court's order denying Father's motion to intervene and remand for a properly noticed hearing, and for any further proceedings consistent with this opinion. *See generally Capshaw v. Osbon*, 2008 WY 95, ¶¶ 13–15, 190 P.3d 156, 159 (Wyo. 2008) (finding a party permitted to intervene should be able to participate in and be heard on the merits of the matter).[3]

## CONCLUSION

[¶28]   The district court erred by not providing Father with notice and an opportunity to be heard on his motion to intervene.  The district court's order denying his request to intervene as a matter of right is reversed, and this matter is remanded for further proceedings consistent with this opinion.

---

[3] We note the district court on remand may need to address the inconsistency between its oral ruling and written order because the district court's written order limits its decision to Lexington's motion to set aside the bond forfeiture and is silent regarding Criminal Defendant's and 307 Bail Bonds's motions to set aside.